We'll call the next matter, Great American Insurance Company v. Norwin School District. Mr. Gesk? Yes, Your Honor. Court, please. Mark Gesk, representing the Appellant Foreman Program and Construction Managers, Inc. If the Court, please, would respectfully request three minutes of rebuttal time. Granted, may I just take up one, I think, minor matter of housekeeping? And that is, is it safe to assume that Foreman has abandoned any claim on appeal against Shoff here? Yes, Your Honor. All right. Your Honor, this is an appeal from a motion for summary judgment dated March 20, 2006, that was granted by the District Court in favor of Norwin School District against my client, Foreman Program and Construction Management, Inc. I speak only for myself, Mr. Gesk, here, but in almost all the arguments this Court hears, every panel of this Court, we tell counsel as a matter of course, we've read the briefs, we understand the case, we understand the facts, and we get to the meat of your legal arguments. I will confess that in this one, for me, anyhow, this is a torturous procedural path that you all traversed to finally get to this point. And in all candor, the implications of some of the rulings by the District Court, not all of which are even inherently consistent, it seems to me, don't lead us ineluctably to a specific result or even remedy. So I say that by way of simply suggesting that it probably would be helpful for somebody as thick as me, anyway, for you to make clear the different procedural stages at which there is some or has been some ruling that implicates the argument you're making, because you began by indicating summary judgment. We've got a number of rulings here by the District Court where summary judgment, or maybe even in fact were partial summary judgment, one that was a motion in limine, and in any event, walk me through this, if you would, carefully. Yes, Your Honor, and I agree with you. It was a morass. And that is not intended as a criticism of the District Judge. You all did that to him, actually. He could only deal with what was presented to him as it was presented to him, and then we get this result. Yes, Your Honor, yes. The first error that was made by the District Court arose from the motions for summary judgments that were filed on behalf of the plaintiff against the defendant, Great American versus Norwin School District. Norwin School District filed a motion for summary judgment against the third-party defendant, my client. Now, what we did not know, Your Honor, was that at that point in time that Norwin School District had entered into a settlement with Great American. Okay, and apparently the District Court didn't know it either, but when the District Court found out about it, it didn't seem terribly troubled by the secret nature of that agreement. No. How did that help you? Well, that's where it starts, because Norwin School District did not contest the motion for summary judgment in the first instance. So without contesting it, the court, of course, entered the summary judgment motion against Norwin School District. We, of course, did contest the motion for summary judgment of Norwin School District, and the court, contrary to the facts in the case, contrary to the law, entered a motion for summary judgment on liability, and liability only, pursuant to the March 20, 2006 order. At that particular time, the District Court held that they were specifically leaving open the question of what damages flowed from the breach of contract that the court ruled upon. And the issue of mitigation. And the issue of mitigation. Then what happened, Your Honor, is that as we proceed to trial, at that particular time, the District Court reversed its position and decided after motions in limine were filed. And going back to that, Your Honor, again, a judgment was proffered by Great American against Norwin School District. And because of this settlement agreement, Norwin School District agreed to the judgment being entered. And that judgment was $467,342. We had no opportunity to contest that judgment. And because of the settlement agreement, Norwin School District could not contest that judgment. We hold that that was incorrect. What was incorrect in it? To the $467,000 plus judgment here. An erroneous interpretation of the underlying contract? Yes. An erroneous interpretation of the underlying contract. What that was, Your Honor, that represented a sum of 5% retainage of the two contracts. And we're really just talking about one contract. They're the same language. So that's 5%. Aren't they the same? Where was the... The language. I'm thinking some language of percentage, though, being different in the two contracts. No, Your Honor. No, because the contracts were set up the same way. The contracts were set up that at 50% completion, 10% retainage was reduced to 5%. But the language of the contract says that the retainage shall not exceed 5%. What happened in what is the normal course of industry practice here... The nest egg retained would not be more than 5% of the total contract. That's correct, Your Honor. Would not exceed 5%. What actually happened here is there were a total on these two contracts of 35 progress payments. As these progress payments, as you proceed, you get to 50% completion. You reduce from 10% to 5%. Then from there, as you're finishing this contract, the school district, pursuant to our recommendation, which is customary and not barred by the contract, reduced that retainage further. They reduced it to 2.5%. They ultimately reduced it to 0.67% as the jobs being completed. And we sought to introduce testimony that not only was that contractually permissible, but that it was also standard procedure. My client, who is in the construction management business, does this on every contract. And it's clear. There's no secret. Every application for progress payment shows what that percentage of retainage is. And each one was approved by my client as a reduction of percentage, was approved by the school district's architect, and was ultimately signed off and paid by the school district's architect. Your position is that Great American's consent was unnecessary? And there's only one phrase. Yes, sure. There's only one phrase in all these contracts. Great American's consent is necessary, however, for final payment. For final. That's clear. No, my position is that when you read the language, and this is only one time, it's in 9.10, which the caption is, final completion and final payment. In that contract language, it says, consent of surety, if any, to final payment. Okay. Now, we have a dispute with Great American that that if any modifies the consent. Their position is that the if any modifies whether or not there's a surety. You see. And there's one case that's applicable on this, unfortunately. Well, it's a 1985 Northern Illinois case called National Exchange, National Bank versus USF&G. And that was decided in 1985 in the Northern District of Illinois. And that holds that that particular phrase modifies consent, so that if there's consent somewhere else in the contract language, then it would be necessary. So the consent of surety, if any, to final payment. In any event, Your Honor, that's the only case on point. The district court found that there was a capital case. Capital indemnity was what the district court followed. Right. Coming out of Utah. But that case is very distinguishable, Your Honor, if you look at that. Because in that case, in the contract, the bond is made part of the general conditions, part of the contract language. And that's why that case is distinguishable from the case from the Northern District, the exchange case. So, Your Honor, so our position on this, just so you understand, is that when it says consent of surety, if any, to final payment, first of all, we believe that the correct interpretation of that is that if there's a consent of surety, then that's fine. But it's not required. Nowhere to this final payment. Nowhere in the contract. It's not in the contract. It's not in the bond. Nowhere else is there a consent of surety even mentioned. Unfortunately, Your Honor, what the district court did was that they decided. What about there was an AIA document that was part of the record of this case? Part of the record that's before us. Yeah, they're all AIA documents. Yeah, well, hear me out. G706. Yes. And it has language, whenever surety is involved, consent of surety is required. Where does that come from? That particular. Sounds like a standard of the trade to me. Well, Your Honor, that particular 706 was a document that was provided by the contractor, Your Honor. That is not binding on us. We do not provide 706. The construction manager does not provide document 706. Did the district court consider 706 in this case? Was it part of the record before? I don't believe so, Your Honor. I don't believe that that was. I don't recall that they based it on their opinion on that. What the district court, as I understand what they did, is that they said that because. Didn't Great American actually reserve the right of consent by incorporating the general conditions into the payment bonds? No, Your Honor. Those are not in the payment bonds. What they do is in Section 8. They did incorporate the general conditions into the payment bonds. Your Honor, yes. Is that clear in the language? But in Section 8 where they talk about retainages being used for their benefit, they only reference a performance bond. They do not reference the payment bond. It's a different issue. So this fundamental error comes around, Your Honor, back to when you have these progress payments being made and the school district making them. We take this down to the last two final payments, which is a payment of $78,000, I think $362 on the one contract and a payment of approximately $24,000 on the other contract. That's arguably the only time a consent of surety would be required under the plain language. What happened, though, is that the district court didn't want to consider that because the judgment had been entered for $467,000. They've been consented to. So our position, Your Honor, is that when you just look at the plain language of the contracts, the absolute most we can owe is the $78,342, which was paid out as a final payment on the one contract. On the other contract, there was never a final payment made. What do you want us to do with this case, Mr. Gaskin? Your Honor, what I ultimately want you to do is to look at the contract language. What relief are you asking for? Asking for judgment in favor of Great America. I don't believe that. When you look at the contract language and you interpret it, Your Honor, and you look at the lack of the requirement of consent of surety, that there is any issue here that we had any obligation to provide a consent of surety and that there's any damages that Norwin sustained. That's the other part of the argument, Your Honor. Because of the settlement agreement, Norwin's never going to have to pay a nickel in this case. They have this settlement agreement. The settlement agreement is an agreement that they will cooperate in seeking money from us, but should there be a judgment entered in our favor, they will never have to pay anything. And, in fact, the school district's representative has testified that it's his understanding of the settlement agreement that they will never have to pay a dime in this case, and that is what the situation is here, Your Honor. So what we are asking the court to do is enter judgment. Why shouldn't we just remand and, given the error you contend took place in the consideration and ruling on this motion, eliminate it? Find error in that, remand, and allow the matter to be tried again in the district court? Well... Admitting the evidence that you... That would be our second position. Our first position. I mean, that would be a trial on both liability and damages as to what does... Well, at least on damages. Well, we would submit, Your Honor, that there was also error concerning the finding of liability. All right, thank you. We'll have you back, Your Honor. See, we have a division of the responsibilities on the other side of the case. May it please the court. Amy Benz, and I will be speaking today on behalf of Great American and Norman School District, and will be taking all of the time for the appellees, as there's going to be no issue regarding show today. If I may, I would like to address the issue that Mr. Guest just raised with regard to the performance bond and the payment bond, claiming that these were not contractual requirements. The bonds that were dealt with at length by the district court, which were part of the record, as were the AIA documents you referenced, Your Honor, incorporate by reference the contract documents and provide... The document I referenced being the 706? Yes, the court below. Was that in the record? Yes, sir. I mean, I should say, was that considered by the district court? Yes, sir, it was at summary judgment. That is the consent of surety. That is a requirement. The AIA document, the 201, which requires the consent of surety to the release of final payment or any remaining retainage, is probably the most used contract document in the construction industry, and that document requires the consent of surety to final payment, and there's a reason for that, because the surety is undertaking a risk. When the surety looks at the projects and the surety decides to right that risk, it looks at the construction contracts as well, and in those construction contracts, it needs to consent to final payment before that money is released. All right, but the contractual documents here also use language of shall not exceed 5%. Doesn't that clearly allow for a reduction of retainage below 5%? No. The contract documents permit the contract... 5%? The contract documents state 10% until... Shall not exceed is nothing but an express declaration that you can't go above, right? That's right. But where's the express declaration that you can't go below? Because the contract documents provide that it can be released from 10% to 5%, and there's no other permission that the contract funds be released. But there's another contract in this case, another document that uses language, and this was what I was trying to remember early on when your adversary was up, that retainage, quote, shall be 10%. That's pretty explicit too, isn't it? Yes, sir. Why not use shall be 5%? Well, that's true. The contracts, and these are the documents that are... Why shouldn't that be significant to this panel, that we're confronted with two distinctly different phrases when referring to retainage? They're not distinct. The contract documents that are applicable here are the supplementary conditions, which provide that they shall not exceed 5% and that the contract shall be 10% until the contract is 50% complete, at which point it shall be halved, so it gets down to 5%. Then you look at the construction contracts between SHO, the contractor, and the school district, and they say the same thing, 10% until the project is 50% complete, and then it shall be reduced to 5%. I think one of them states 95% shall be released. So however you slice it, you come to the 5%, and that money was to be held for the benefit of the surety. It was released. Now, this issue that appellant raised is saying we're not responsible for the release of consent of surety. The appellant was paid handsomely, over $800,000 to manage this construction project. That was its job. Its job was to make sure that everything was in place prior to authorizing the school district to release the money. It failed. It breached its construction management agreement. Who was the foreman responsible to? The Norwin School District. And your client and Norwin entered into an agreement? Yeah. In this case, I'm representing both Great American and Norwin School District. But, yes, Great American issued a bond, a performance payment and maintenance bond that is a tri-party agreement that incorporated by reference the construction contracts, the obligee being the school district, the principal being school district. Everybody's dealing at arm's length, but foreman doesn't know about your little side deal. Is that right? That is he's referring to the partial settlement agreement. That's a different document. And you don't even tell the district court about it. Is that right? Yeah. The partial settlement agreement. Did you answer my question? If your Honor is referring to the partial settlement agreement, that agreement was reached after the filing of the motion for summary judgment. And that agreement, when the district court had a status conference, we identified to the court that we had partially settled a portion of the case. That portion of the case dealt primarily with maintenance bond claims. And that is part of the record, by the way, this partial settlement agreement. There were maintenance bond claims. The school district had leaking in these buildings and the surety had issued maintenance bond. A good portion, which I know appellant doesn't want to recognize, was dealt with in that settlement agreement because there were claims about leaking and things like that that had to be dealt with. Also, the school district recognized, because we were through discovery, that there were no consents of surety. There were admissions and the depositions of the appellant's representatives that it was their job to have the consent of surety, and they did not have that consent of surety. The school district acknowledged there was no consent of surety. Everybody acknowledged that it had to be there because it was in the contract documents. The partial settlement agreement was an effort to reduce the scope of the litigation. Let me slow you down just a little bit and follow up on Judge Stafford's question, if I might, because I realize the secrecy of that agreement may be an inconvenient fact and may or may not ultimately have significance to us here. But it also seems to be both consistent with Judge Stafford's question and whether or not ultimately significant. It's striking to me that in, I will say, your motion for summary judgment, it's your motion for summary judgment now as Norwin, I guess, pursuant to that secret agreement because you took over representation of both parties pursuant to that agreement. Isn't that correct? No, at that point, Attorney David Rave still represented Norwin. I understand, but it's your motion now for purposes of dealing with it before this court. Yes, sir. And in the October 13, 2006 motion for summary judgment, Norwin, your client, asserted that, quote, a judgment in favor of Great American, which requires the school district to again pay Great American the contract balances who were already once paid to Shaw. That was a misrepresentation. No, Your Honor. That motion was filed in October. I believe that's the date. The settlement agreement was reached in November. Was it corrected? At the time, it was. Oh, absolutely. How was it corrected to the district court? Because when the motion was filed, there hadn't been no resolution. At that time, the motion was filed, and I don't have the document in front of me. There was no resolution. This was hammered out in December, I believe, of 2000. Right. So at what point was that statement corrected for the change of events made known to the district court? I believe the district court was alerted to this fact at a status conference, and then the appellant. After the district court had ruled. After the district court entered summary judgment. However, the appellant. So by that time was a misrepresentation. Whether or not it bothered the district court, I can't tell from the papers, but it had not been brought to the district court's attention. No, I don't believe that was a misrepresentation. Number one, the way the settlement agreement is working. Well, then maybe you can enlighten this panel on just how there is going to be some financial prejudice to the school district. The school district has suffered a judgment, and the school district has to – it's a credit issue. The school district has identified that judgment. The school district has a contract with its construction manager. This construction manager breached that contract. The school district does not have to go out. Your contention is that the damage may be a harm to the district's credit rate. Is that your position now? Well, yes, it's a judgment. As the court noted in Ammon and Gray, the judgment is a real judgment. Well, isn't that concern negated by the explicit statement in the agreement that Great American will, quote, satisfy the record of the judgment if Foreman doesn't pay? You've got a guarantor, don't you? The provision provides that the judgment will only be satisfied on two circumstances. One is if there's an unappealable order, final order, entered in favor of Foreman, or the other is in the event that neither Foreman nor its insurance company can pay the damage. Does that, Ms. Benjamin, does it not effectively eliminate your exposure or at least drastically reduce it beyond? You're talking about her as Norwin. Yes, well, she is both Norwin and Great American. Does it reduce the exposure? I don't know. I don't think so. It's a judgment, and it could have to be paid. It's also important to note that, and if I may, the concept that the consent of surety provision is not required would essentially obliterate that requirement in the AIA-201. It would remove the benefit it was intended to confer upon the surety and would essentially afford no protection whatsoever. The other argument that was made in closing by opposing counsel is that this was not that there had to actually be payment of this judgment. I would suggest that what appellant is looking to do is to graft onto Pennsylvania law a rule that would prohibit a party from enforcing its contractual obligations unless it actually goes out of pocket to pay a judgment. I think this is contrary to what people do when they enter into agreements. It's contrary to reasonable expectations of the parties, and I think it is contrary to Pennsylvania law. With regard to the motions in limine, which appellant did not… Why should the district court have kept this agreement out of evidence? Because it was an unambiguous agreement. The court looked at it. It determined that it did not release foreman of liability whatsoever, and that was a legal issue. To present it to the jury would have caused confusion, and it would be unfairly prejudicial. By the way, I should mention that appellant… Those are words, but where's the prejudice? Well, it would cause undue confusion. I think the jury would misunderstand what was going on. The court looked at it and said, for one legal issue, see if they were released or not. That's FRA 403 language, but I don't understand why it's either prejudicial or confusing. Because the question would be, I think it would misplace. This is a trial on damages. The only issue the court was looking at by virtue of what… Was it really on damages or was it on indemnification? It was on damages. Because it was pretty well set, $476,000 and some change. Wasn't that the amount? That was the measure, and there was no evidence put on by foreman as to the measure of damages. The court, in effect, told the jury that if you find liability, this is the amount of damages, and it happened to be about 5%. The $476,000, isn't that about 5% of the contract? What happened, Your Honor, at the lower court is the school district put in at length each pay application and each corresponding payment representing 5% on each project. That went into evidence meticulously. Foreman never objected to it going into evidence. They never offered any controverted evidence on this fact. They acknowledged that that money was released. It was not until the jury instructions occurred after all of the evidence was in and the jury already knew what these dollars were that the court instructed, made its comment with regard to the judgment. To instruct the jury otherwise would be contrary to the evidence because they had these pay applications. In fact, the school district representative took the stand and said, yes, this was paid, this is the amount, and each one was added up, and they added up to this $467,000. As far as the jury knew, the school district was going to be liable for that. And the reality was that you had given them a bath. They were going to get $476,000. You were going to pay it, right, for them, and the school board was not on the hook for that. The school district had a judgment against it for breach of contract, and the construction manager breached its contract to the school district. So these are really two breach of contract actions. That's what the whole case is about. There's no indemnity whatsoever. I know that the appellant would like to suggest it's an indemnity action and cites common law indemnity, but these are breach of contract cases. What was your agreement with GAIC's agreement with the school board? Wasn't that exactly what it was that you were going to? The agreement, the partial settlement agreement, which is distinct from the constructions agreement, was an effort to reduce the litigation to deal with maintenance bond claims, which I commend the court to read this because it's very clear. A good portion of it is dedicated to these two facilities and having the repair work being done. And in that process, the school district acknowledged that it did not have the consent of surety. This was after discovery was done. It was clear there were no consents of surety. And so basically they said, we're not going to oppose summary judgment. We know there's no consent of surety. Depositions had been taken. Depositions of appellant's reps were taken. Depositions of school district's reps. Depositions of the surety's reps. There was no dispute that the consents were gone and the money was irretrievably paid. So at that point, the school district knew. But the big focus of this agreement, and that's why Shoaff was a part of it, was to fix some of these problems. There were maintenance bonds that were issued on both of these projects that required the surety to fix real problems. And so that's why I commend this to the court to look at. The lower court looked at it. When Forman argued they were released by the virtue of this agreement, the court looked at the document and said, they're not released. This is a legal conclusion, and the court looked at it, and that's why I would respectfully submit that it did not appropriately belong before the jury. But before the court, the school board and Norwin, the school district, and Perry American were never adversaries. The school didn't yet. The two of you reached this agreement and then ganged up on Forman, didn't you? The way the case was, Great American, the surety, sued the school district. The school district, basically because of breach of the construction agreement, letting go the money, the 5%, without the consent of surety that's required. The school district then joined as additional defendants the contractor and the construction manager. The basis of the claim against the construction manager, and they're an additional defendant, was for breach of contract. The argument that it was a Mary Carter kind of agreement doesn't work because always the school district and the Foreman, the appellant, were on opposite sides. So it wasn't like somebody switching sides. In this case, the school district had already sued the construction manager for breach of contract. So really it was an effort to limit the scope of the litigation, and that's how this came about. I see my time is up. Thank you very much. Thank you. Mr. Gaskin. Your Honor, it's very clear here that the school district was not damaged. The school district paid approximately $9 million for two renovated schools. That's what they received, two renovated schools, despite the fact the payments were made by the school district to the contractor. And the contractor continuously, affidavit after affidavit, certified that he was paying his suppliers and his subs. Fortunately for the school district, they had a payment bond with assurity, the very purpose of this situation. When a contractor is not fulfilling his obligations, Great American has to respond. They were contractually obligated to respond. They did respond. They cut a deal with Norwin. Norwin will never have to pay a penny. That was testified to by Norwin's representatives. That is in the release agreement, that once there is a judgment, it will not have to be paid. Therefore, Your Honor, when we look at the measure of damages, and I cite the Mellon Bank case from the Western District Court, Judge Weber, and this is clear. The measure of contract damages is that the aggrieved party should be placed as nearly as possible in the same position as he would have occupied had there been no breach. That happened. In other words, he is entitled to be reimbursed for money actually paid out. Norwin has not paid out one cent, will never pay out one penny. There is no damage. Second of all, Your Honor, my client did not have an obligation to secure a consent of surety. That is the obligation of the contractor. My client processes paperwork. My client was misrepresented to. He had worked with Schaaf, the contractor, on many other projects, had a relationship with them. We didn't even get to put any of this into evidence because what the District Court did was two things. They find liability on the contract, and they say, well, we can decide on damages. But on April 5, 2007, Judge McVeary, in his opinion, writes, to put Norwin in the same position it would have been had Foreman properly performed, the great American judgment against Norwin must be satisfied. We were not permitted to put in any evidence concerning that Norwin was never going to have to pay any money. What did you indicate or show the District Court you would be able to place into evidence? We wanted to put into evidence, Your Honor, first of all. Did you make a proffer? Yes. Okay. Yes, Your Honor. You're contending that great American and Norwin should have mitigated, right? Well, yes. That was a whole different issue, the mitigation issue.  That was the only issue that was tried to the jury, was the mitigation of damages issue. But in that particular case, the judge restricted me from putting in any evidence that as part of their settlement agreement, they let Choff completely off the hook. Well, that's what I was getting to. Yes. What, if anything, did you proffer to the District Court you could demonstrate with respect to great American or Norwin's ability to pursue Choff? Because as I understand mitigation principles, the obligation was yours to produce some estimate. Yes, Your Honor. You're correct on that. What we proffered, Your Honor, is that we wanted to show that, first of all, that there was a contractual relationship between Choff and the school district. It wouldn't matter if Choff was judgment-proof, would it? Well, Your Honor, A, we don't even know if Choff was judgment-proof or not. Well, that's my point. What did you proffer to the District Court in this regard? We wanted to show what the assets were of Choff and what was available, and the court ended up holding that that was speculative, that we couldn't get into that. So we ended up really not presenting anything other than putting Mr. Choff on the stand and having him testify that the money, as far as he knew, was gone. That was it. Thank you.  Thank you, counsel. Counsel, this is something of a morass that we've all waded into. We thank counsel for their efforts to bring a measure of clarity to this controversy, and we'll take the case under advisement.